**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No.**

**ECO-SITE, LLC**, a Delaware limited liability company, and
**T-MOBILE WEST LLC**, a Delaware limited liability company,

**Plaintiffs**,

v.

**COUNTY OF PUEBLO, COLORADO**, a Colorado County, acting by and through its **BOARD OF COUNTY COMMISSIONERS.**

**Defendant.**

---

# COMPLAINT

---

Plaintiffs Eco-Site, LLC ("Eco-Site") and T-Mobile West LLC ("T-Mobile") bring this action for relief from the unlawful denial by the Board of County Commissioners of Pueblo County, Colorado (the "Board") of a special use permit and any other approvals and permits required to construct a wireless-communications facility in Pueblo County, in violation of the federal Telecommunications Act of 1996, 47 U.S.C. §§ 151, *et seq.* (the "Telecommunications Act" or the "Act").  For their complaint, Eco-Site and T-Mobile allege as follows:

### I. NATURE OF THE MATTER

1. This is an action for expedited declaratory, injunctive and mandamus relief pursuant to 47 U.S.C. § 332 of the Telecommunications Act, 28 U.S.C. § 2201.  The Telecommunications Act, inter alia, prohibits State and local government regulation of the placement or construction of personal wireless service facilities that "prohibit[s] or ha[s] the

effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Section 332 also requires that State and local decisions denying requests to place or construct personal wireless service facilities be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). The Board violated these provisions of Section 332(c)(7)(B) of the Telecommunications Act when it denied Eco-Site's request for approval to place and construct a 199-foot tall, wireless telecommunications facility for the benefit of T-Mobile on real property located in an agricultural zoned district in Pueblo County, Colorado. This is the third denial by the Board of an Eco-Site special use permit application for a telecommunications facility in Pueblo County within a short period of time, including a prior permit denial that is the subject of a complaint filed with this Court by these Plaintiffs against Pueblo County in Case No. 17-2535. The Board's denial of this application has the effect of prohibiting the provision of personal wireless services and was not based on substantial evidence. Eco-Site and T-Mobile, therefore, seek all appropriate relief under 47 U.S.C. § 332(c)(7)(B)(v).

## II. THE PARTIES

2. Plaintiff Eco-Site is a Delaware limited liability company. It is authorized to do business in the State of Colorado. Eco-Site is an independent owner, operator and developer of telecommunications infrastructure. The infrastructure it owns and operates, including the telecommunications facility at issue in this case, is typically used by wireless communications services providers, such as T-Mobile, to provide telephone, data, text messaging and other services to their subscribers.

3. Plaintiff T-Mobile is a Delaware limited liability corporation. It is authorized to do business in the State of Colorado. T-Mobile, through its licensed affiliates, provides wireless-

communications services under licenses issued by the Federal Communications Commission ("FCC").

4. Defendant Pueblo County is a county and political subdivision of the State of Colorado, duly organized and existing under the laws of the State of Colorado. The Board consists of three elected members that serve as the administrative and policy-setting authority for Pueblo County.

### III. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action under Section 332(c)(7)(B)(v) of the Telecommunications Act because Eco-Site and T-Mobile have been adversely affected and aggrieved by the Board's denial of Eco-Site's special use permit application. In addition, the Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant is located in this judicial district and the events or omissions giving rise to Eco-Site's and T-Mobile's claims arose in this judicial district.

### IV. FACTS

**A.** **Wireless Communications Systems.**

7. Eco-Site owns and operates telecommunications infrastructure, such as the communications tower at issue here, that are used by its customers (wireless service providers such as T-Mobile) to provide licensed wireless communications services to their customers in Colorado. T-Mobile, and other wireless service providers, lease space on and around Eco-Site's communications towers to locate and operate their personal wireless service facilities. In addition to leasing space to wireless service providers, Eco-Site also assists the wireless service

providers, such as T-Mobile here, in locating and acquiring interest in suitable properties that meet the engineering requirements of the wireless service provider, obtaining necessary Federal, State and local government approvals to place personal wireless service facilities on those properties, and constructing the towers or other structures upon which wireless service providers can place their personal wireless service facilities.

8. To provide effective, continuous and uninterrupted wireless communications service, T-Mobile relies upon a network of overlapping and interconnected personal wireless service facilities. These personal wireless service facilities receive and transmit low-power radio signals to and from mobile wireless handsets, thereby facilitating wireless or "mobile" communications. Each personal wireless service facility serves a geographic area immediately surrounding the facility, commonly referred to as a "cell."

9. Each personal wireless service facility must be located on structures of sufficient height, e.g., communication towers, and must be placed within a limited area within each cell so that each facility provides a line-of-sight communications signal that reaches all of the surrounding cells and can properly interact with surrounding antenna facilities to provide seamless, reliable coverage throughout a given geographic area.

10. Each telecommunications tower has a limited maximum coverage area, the extent of which varies depending upon several factors, including the tower height, local topography, configuration of various existing structures, customer usage and population densities.

B. **The Telecommunications Act**.

11. The Telecommunications Act was enacted in 1996 to, among other things, increase and improve competition in the telecommunications industry. It establishes a national policy to "make available, so far as possible, to all people of the United States, without

discrimination . . . a rapid, efficient, Nation-wide and worldwide wire and radio communications service with adequate facilities at reasonable charges for the purposes of national defense [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

12. In enacting the Telecommunications Act, Congress gave due consideration to the potential conflict between State and local government regulations and the national need for deployment of advanced telecommunications and information technologies. Accordingly, the Telecommunications Act vested substantial jurisdiction over the deployment of telecommunications with the FCC and preempted the authority of state and local governments to prevent or interfere with the deployment of telecommunications systems by imposing burdensome or unreasonable permitting requirements. 47 U.S.C. § 253(a). Specifically, Section 253(c) of the Act states: "No State or local status or regulation, or other state or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

13. With respect to wireless telecommunications services, Congress explicitly placed limitations on local zoning authority decisions regarding the placement, construction, and modification of personal wireless facilities. Section 332(c)(7)(B) of the Act states:

    (i)    The regulation of the placement, construction, and modification of personal wireless services facilities by any State or local government or instrumentality thereof –

        (I)    shall not unreasonably discriminate among providers of functionally equivalent services; and

        (II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

* * *

 (iii) Any decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. §332(c)(7)(B).

14. As Congress acknowledged, wireless communications services play an important role in promoting public safety and consumer convenience. From 1996 to 2016, the number of wireless subscriptions has increased dramatically, from 44 million to approximately 341 million. *See In the Matter of Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993, Annual Report and Analysis of Competitive Market Conditions With Respect to Commercial Mobile Services,* Twentieth Report, 2017 FCC LEXIS 3045, FCC 17-126, fn. 84 (Sept. 27, 2017).[1] There are now more wireless subscriptions than landline telephone subscriptions in the United States. At present, the number of landline telephone subscribers across the nation decreases every year while the number of wireless subscribers increases. For many Americans, wireless devices have become an indispensable replacement for traditional landline telephones. The demand for wireless telephone service, including within Pueblo County, is expected to continue to grow.

15. Wireless services play an important role in public safety, providing necessary emergency 911 service, reverse 911 notifications, public alerts such as Amber alerts, and GPS location identification information. Service gaps in a wireless service provider's communications network undermine the significant safety benefits of wireless communication services. For example, in 1996, the FCC mandated that all wireless providers develop enhanced 911 services to ensure that wireless communication service customers can reach 911 emergency services. These FCC regulations are proceeding in phases and will further aid in the

---

[1] The number of wireless connections at the end of year 2016 was approximately 416 million. *See id.* at Table II.B.2.

development of a system that can closely determine the geographic location of any wireless user who dials "911."  The FCC has recognized that "one reason access to emergency 911 systems is not always available for wireless handsets is that there are gaps in the signal coverage provided by wireless carriers."  *In the Matter of Revision of the Commission's Rules to Ensure Compatibility with Enhance 911 Emergency Calling Systems, Second Report and Order*, 14 FCC Rcd 10954, 1999 FCC LEXIS 2629, ¶ 14 (released June 9, 1999).  "The failure to deliver 911 calls because of coverage gaps can contribute to tragic outcomes in these emergency situations."  *Id.* at ¶ 19.

16. To meet the policy goals that Congress has established and to provide personal wireless services to local businesses, public safety entities, and the general public, T-Mobile must consistently add to and update its technology, facilities, and network to keep pace with its customers' ever-growing demand for mobile services, including mobile data service and wireless phone coverage.  T-Mobile must, among other things, regularly maintain, grow and update its network of personal wireless service facilities, each of which consists of antennas and related equipment designed to send and receive radio signals.

C. **Eco-Site's Efforts to Address the Significant Coverage Gap in Pueblo County.**

    a. **Application for Tower at Pueblo West.**

17. T-Mobile's radiofrequency ("RF") engineers determined that, in order to provide reasonable, reliable and uninterrupted service to its customers in the Pueblo West area in Pueblo County, a new personal wireless service facility was required.  The RF engineers assessed the coverage in the area and determined that the significant service coverage gap in this area could

be adequately addressed through a new personal wireless service facility placed at approximately 255 feet in height.[2]

18. Where existing structures are not viable options for the location of new wireless facilities, T-Mobile will search the relevant area for property locations on which to place new infrastructure. In this case, T-Mobile assessed the viability of collocating its new wireless facilities on existing towers and concluded that none of the existing infrastructure would adequately address its significant gap in coverage. As a result, T-Mobile determined it needed new infrastructure on which to place its personal wireless facilities in order to meet the identified coverage gap.

19. Working together with Eco-Site, an assessment was made of the zoning in the coverage gap area and suitable locations were considered. An interested property owner was located who was willing to lease property on which the new infrastructure could be constructed. Eco-Site filed the subject amended application for a special use permit with Pueblo County for the construction of the new telecommunications tower on July 25, 2017 ("2017 Pueblo West Permit Request"). The 2017 Pueblo West Permit Request, which initially requested a permit for a 255 foot self-support tower and accessory building on a 5625 square foot parcel in an A-1, Agricultural zone district, was amended to reduce the height of the proposed tower from 255 feet to 199 feet, in response to concerns expressed by neighbors regarding the height and lighting of the tower. A 199 foot tower does not require lighting. The subject tower would be designed as a lattice-type tower in order to create a harmonious environment with the area immediately surrounding the tower. Eco-Site worked with the Pueblo County Planning Staff to address

---

[2] Eco-Site and T-Mobile later agreed to reduce the height of the tower to 199 feet in order to address concerns raised by residents in a nearby neighborhood.

various concerns raised regarding the application. As a result of these efforts, the Planning Staff recommended approval of the special use permit application.

20. A hearing was held on the 2017 Pueblo West Permit Request on September 20, 2017 before the Pueblo County Planning Commission ("Planning Commission"). At the hearing, Eco-Site and T-Mobile presented evidence regarding the gap in coverage and service needs of T-Mobile that the proposed tower site would address. Specifically, evidence presented by Eco-Site and T-Mobile that identified key locations in the Pueblo West area where there is a lack of T-Mobile service coverage or the service is of low quality. In addition, Eco-Site and T-Mobile demonstrated that there were no other towers within a three (3) mile radius of the proposed site that could be used. The closest tower, which was five (5) miles from the proposed site, did not adequately address T-Mobile's coverage gap and service needs. Eco-Site and T-Mobile also demonstrated that further reducing the height of the tower would not address the coverage gap and that neither collocation on the tower that was five (5) miles from the proposed site nor shifting the proposed tower one (1) mile to the west of the proposed site would provide coverage in a residential area where T-Mobile had a significant gap in coverage.

21. Despite the positive recommendation of its Planning Staff, on September 22, 2017, the Planning Commission denied Eco-Site's 2017 Pueblo West Permit Request ("Decision"). In its Decision, the Planning Commission acknowledged that while a lattice type telecommunication tower *may not* substantially modify the Land Use plan or the intent, purpose, and spirit of the Land Use Code, and noted that other similar type of facilities have been approved and built on other A-1 zoned property within western Pueblo County, it concluded that the proximity of the proposed facility to existing residential structures seemed incompatible and

did not promote the stated purpose of the zone district designation or support the character of the area.

22. The Planning Commission concluded:

　　i. The proposed use is not compatible within the context of the surrounding parcels of land which, in turn, does not create a harmonious environment with that of the surrounding properties, a great deal of which are residentially developed.

　　ii. The majority of the existing structures in the immediate area are of standard height for residential construction. The proposed height of the lattice type telecommunications tower is 199 feet. Information provided by both the applicant and those in opposition indicated the overall height of the facility could be reduced and still be effective, noting the applicant's desired coverage objective would not be satisfied; however, enhanced coverage could be achieved.

　　(The stated purpose of the A-1 Zone District is *"... retain and promote the appropriate use of dry range and irrigated lands and encourage open use of the land in keeping with its natural characteristics and agricultural functions"*).

23. While not finding that the proposed use would adversely impact the public health, safety or welfare, the Planning Commission stated that "it would seem that a facility could be constructed in another area of western Pueblo County, away from residentially developed parcels of land, and achieve the desired outcome for all regardless of the interpretation of what constitutes the 'public health, safety or welfare.'" The Planning Commission did not identify any site that would accomplish those goals and that the County would approve.

24. On September 29, 2017, Eco-Site appealed the Decision to the Board in accordance with the County Code, Chapter 17.140.101. The Board denied the appeal on October 30, 2017. The Board's denial and the Planning Commission's denial are attached as Exhibits A and B, respectively.

b. **Prior Applications filed by Eco-Site and Denied by Pueblo County.**

25. Prior to its submission of the 2017 Pueblo West Permit Request, Eco-Site had submitted several other special use permit applications for telecommunications towers for the benefit of T-Mobile that were denied by Pueblo County. In mid-2016, Eco-Site, on behalf of T-Mobile, submitted a special use permit application in another area in Pueblo County where T-Mobile had a significant gap in coverage. In this application, filed on October 11, 2016, Eco-Site sought a special use permit for a 100 foot tower in an A-3, Agricultural zone district (Special Use Permit Request No. 2016-010, the "First Permit Request"). Despite a favorable recommendation from the Planning Staff regarding the request, the First Permit Request was denied, first by the Planning Commission on November 16, 2016, and then by the Board on December 14, 2016, on nearly identical grounds as the instant permit request.

26. On January 20, 2017, Eco-Site applied for a second special use permit to address the same gap in coverage as the First Permit Request. The second application sought a permit to construct a 100 foot tower on another parcel in the same general area of Pueblo County as the First Permit Request. (Special Use Permit Request 2017-02, the "Second Permit Request"). The site for this new application was in an A-2, Agricultural zone district. The Second Permit Request was denied, first by the Planning Commission on August 17, 2017, and then by the Board on September 26, 2017, on nearly identical grounds as the instant permit request.

27. On October 23, 2017, Eco-Site and T-Mobile filed a lawsuit challenging Pueblo County's denial of the Second Permit Request with this Court. *See* Complaint, Case No. 2017-cv-2535.

## COUNT I

### (The Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) – Effective Prohibition of Service)

28. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29. A stated purpose of the Telecommunications Act is to "promote competition and reduce regulations in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." (Preamble to the Telecommunications Act).

30. The Telecommunications Act prohibits local regulation of the placement, construction, or modification of personal wireless service facilities that "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

31. The Board's repeated refusal to allow Eco-Site and T-Mobile to place wireless facilities within the County to address significant coverage gaps violates Section 332(c)(7)(B) of the Act because it has the effect of prohibiting the provision of personal wireless services.

32. T-Mobile has a significant gap in reliable wireless coverage in the area that is the subject of the 2017 Pueblo West Permit Request, as demonstrated by, among other things, the evidence presented to Pueblo County, such as RF propagation maps, the population in the area, traffic in and through the area, the need to provide emergency 911 services, and the identification of significant locations within the area of the coverage gap.

33. The telecommunications tower proposed in the 2017 Pueblo West Permit Request is the least intrusive means of remedying the significant gap in T-Mobile's personal wireless service coverage. Eco-Site and T-Mobile have no less intrusive alternatives to remedy the

significant coverage gap, taking into account, among other things, technological requirements, the ability to lease property and construct the necessary facilities, and zoning regulations.

34. The Board's denial of the 2017 Pueblo West Permit Request, submitted on behalf of T-Mobile, has effectively prohibited the provision of personal wireless services in violation of Section 332(c)(7)(B) of the Act.

35. In addition, the Board's interpretation of its zoning code effectively prohibits the provision of personal wireless services insofar as the Board has concluded that visible telecommunications facilities are not compatible with the agricultural character of the zoning district and, thus, are not permissible.

36. The Board's failure to comply with the requirements of the Telecommunications Act and its refusal to grant the 2017 Pueblo West Permit Request has caused and will continue to cause Eco-Site and T-Mobile irreparable harm.

37. Under the Telecommunications Act, Eco-Site and T-Mobile are entitled to obtain an order directing the Board to issue the permit and approve the installation and operation of Eco-Site's and T-Mobile's wireless infrastructure at the requested site.

## COUNT II

### (The Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) - Substantial Evidence)

38. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

39. Under Section 332(c)(7)(B)(iii) of the Act, "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

40. The Board's decision violates § 332(c)(7)(B) because it is not supported by substantial evidence contained in the written record that establishes that Eco-Site's 2017 Pueblo West Permit Request failed to comply with the applicable requirements of the County's zoning code. Among other things, there is not substantial evidence that the proposed tower: 1) is incompatible with surrounding uses; 2) does not create a harmonious environment with the surrounding properties; or 3) does not promote the stated purpose of the zone district or support the rural character of the area.

41. In addition, the Board's decision is not based upon substantial evidence because the Board improperly relied on considerations that are not found in its zoning code or that are inconsistent with the plain meaning of its zoning code.

42. The Board's failure to comply with the requirements of the Telecommunications Act and its refusal to grant the 2017 Pueblo West Permit Request has caused and will continue to cause Eco-Site and T-Mobile irreparable harm.

43. Under the Telecommunications Act, Eco-Site and T-Mobile are entitled to obtain an order directing the Board to issue the permit and approve the installation and operation of Eco-Site's and T-Mobile's wireless infrastructure at the requested site.

**PRAYER FOR RELIEF**

For these reasons, Eco-Site and T-Mobile respectfully pray that the Court:

1. Conduct expedited review pursuant to 47 U.S.C § 332(c)(7)(B)(v) of the matters set forth in this Complaint;

2. Enter an order finding that the Board's decision violates and is preempted by 47 U.S.C § 332(c)(7);

3.       Enter an order requiring the Board to issue Eco-Site the requested special use permit and such other approvals necessary to authorize Eco-Site and T-Mobile to install, operate, and maintain its proposed facilities at the requested site; and

4.       Such other and further relief as the Court deems appropriate.

Respectfully submitted this 29th day of November, 2017.

        **MOYE WHITE LLP**

        By: */s/ Rebecca B. DeCook*
            Rebecca B. DeCook (#14590)
            Abigail L. Brown (#46172)
            1400 16th Street, 6th Floor
            Denver, Colorado  80202-1027
            Telephone: (303) 292-2900
            Facsimile: (303) 292-4510
            Email:  becky.decook@moyewhite.com
            Email:  abby.brown@moyewhite.com

            *Attorneys for Plaintiffs Eco-Site, LLC and T-Mobile West LLC*

        **DAVIS WRIGHT TREMAINE LLP**

            Martin L. Fineman, Esq.
            Davis Wright Tremaine LLP
            505 Montgomery Street, Suite 800
            San Francisco, CA 94111
            Telephone:  (415) 276-6500
            Facsimile:  (415) 276-6599
            Email: martinfineman@dwt.com

            *Attorney for Plaintiff T-Mobile West LLC*

4829-8538-7606.4